IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APRIL IRVING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-3037 |
| | § | |
| CHICAGO BRIDGE & IRON COMPANY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, APRIL IRVING ("Plaintiff" or "Ms. Irving"), by and through her counsel, hereby files this Complaint against Defendant, CHICAGO BRIDGE & IRON COMPANY ("Defendant"), for willful violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA") and the Texas Labor Code §21.051 *et seq*. ("TCHRA"). In support of her causes of action, Plaintiff states the following:

## I.
## SUMMARY

Defendant terminated Ms. Irving after it became aware of her disability and the medication she was taking for it. Defendant terminated Ms. Irving even after it was made clear that the prescribed medication would not have impacted the essential functions of her administrative, office job *and* even after Ms. Irving and her doctor agreed that Ms. Irving would immediately discontinue taking the medication. Accordingly, the EEOC made a finding of disability discrimination under the ADA by Defendant. Defendant's unlawful treatment of Ms. Irving caused her significant damages, as outlined below.

## II.
## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, APRIL IRVING, is an individual residing in Jefferson County, Texas.

2.      Defendant, CHICAGO BRIDGE & IRON COMPANY, is a for-profit corporate entity formed and existing under the laws of the State of Delaware, having offices in Harris County, Texas.

3.      The events at issue in this Complaint occurred in Harris County, Texas.

4.      This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 USC § 1332(a).

5.      Plaintiff exhausted her administrative remedies under the ADA and the TCHRA by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission, Civil Rights Division ("TWC").  **The EEOC found reasonable cause to believe that Defendant violated the ADA** "in that [Defendant] discriminated against [Ms. Irving] because of her disability and because it regarded her as disabled" and issued a Right to Sue letter noting as such.

6.      Venue is proper in this district and division under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III.
## FACTUAL BACKGROUND

7.      On November 18, 2016, Defendant, CHICAGO BRIDGE & IRON COMPANY, interviewed Ms. Irving for the position of Safety Permit to Work Coordinator.  Ms. Irving's original interview was with Nicki Hawley, Recruiter.

8.      On November 22, 2016, Defendant, CHICAGO BRIDGE & IRON COMPANY, interviewed Ms. Irving a second time for the position of Safety Permit to Work Coordinator.  Ms. Irving's second interview was with Larry Patronella, Safety Manager.

9.      On March 14, 2017, Roman Bertrand, Safety Supervisor for Defendant, informed Ms. Irving of a "Safety Permit to Work Coordinator" position in his department that Ms. Irving had been approved to fill.

10.     Ms. Irving then received an employment offer from Defendant through its Recruiter, Larry Patronella.

11.     Ms. Irving began her employment with Defendant on approximately March 16, 2017.

12.     Thereafter, in late March of 2017, Ms. Irving underwent many hours of training, passed an alcohol and drug urinalysis test, and submitted to a low threshold drug analysis as part of her on-boarding processing.

13.     On April 3, 2017, called Dr. Burgeron, Medical Review Officer for Prime Occupational Medicine (a third-party occupational medical care provider), and told Ms. Irving that her drug test tested positive for Klonopin and he needed a prescription verification, which Ms. Irving provided.

14.     Ozandra (L/N/U), in the Defendant's hiring department, then told Ms. Irving that her results had been changed to a confirmed negative.  Thereafter, Defendant issued Ms. Irving all the equipment to start work in her new position.

15.     On March 31, 2017, Defendant had Ms. Irving fill out a "fit for duty" form at the Prime Occupational Medicine office.  While there, Ms. Irving explained to Jackie (L/N/U), a Nurse Practitioner employed by Prime Occupational Medicine, that she did not take any medications

3

before or at work and that she was prescribed Klonopin for a nerve issue regarding Shingles in her eye.  Jackie (L/N/U) then wrote Ms. Irving's job restrictions based on the Klonopin: (1) no operating moving machines; (2) no working around moving machines; and (3) no working at heights that would require her to tie-off.  Thereafter, Ms. Irving provided the restrictions received from Prime Occupational Medicine to Ozandra and received her badge to begin working.

16.     On April 10, 2017, Ozandra called Ms. Irving and told her that Rick Hopper, Director of Human Resources, was retracting her offer of employment for a reason unknown to her.

17.     On April 11, 2017, Ms. Irving emailed Hopper a note from her doctor, James Sims, stating that **Ms. Irving was "cleared to work without limitation or restriction."** (emphasis added)  Hopper then responded that Defendant could not accommodate her restrictions.  Ms. Irving immediately emailed Hopper and told him that his job was an "office job."  Kenny Weaver, Commissioning Engineering Electrical Manager and Jim McCaren, Commissioning Director, all agreed with Ms. Irving that her restrictions had no impact on her job.

18.     On April 13, 2017, Bertrand emailed Kim Lawrence, HSE Manager, Hopper, and Weaver, and wrote that **Ms. Irving's position "does not require field work, does not require climbing, working at heights, lifting, entering of confined spaces, or operating any mobile equipment" and was "clearly defined as administrative."** (emphasis added)  Bertrand included the text of Ms. Irving's job duties and also wrote, "April Irving will work under my direct supervision and I can assure all parties that **she will not be in the field**." (emphasis added)  Later that day, Hopper asked Bertrand for Ms. Irving's resume, which Bertrand provided to him.

19.     On April 17, 2017, Ms. Irving emailed Hopper that she and Dr. Sims **agreed to discontinue the medication**, Klonopin, so that Ms. Irving could work without restriction.

4

20.     On April 24, 2017, Dr. Sims spoke to Dr. Luke Lee of Prime Occupational Medicine.  Hopper emailed Ms. Irving that Dr. Sims confirmed to Dr. Lee the discontinuance of her medication.  However, Hopper represented that he would not change Ms. Irving's job restrictions.  Hopper claimed that Dr. Sims told Dr. Lee that the discontinuance did not "necessarily mean that [Dr. Lee] should recommend any modifications to the current safety recommendations made to [Ms. Irving]."  This was false.

21.     In late April 2017, Ms. Irving submitted a complaint to Defendant's ethics hotline, via Nevex Global.  Upon information and belief, Defendant failed to investigate Ms. Irving's complaint.

22.     On April 24, 2017, Dr. Sims wrote a letter to Defendant which stated, "At this time, I have not place any restrictions on her at this time. However, I did speak with Dr. Lucas Lee, with Mrs. Irving approval, to discuss and confirm her medical care and treatment… During the call, it was brought to my attention that one of her medications could possible create an occupational hazard. I discuss this with Mrs. Irving and she agreed to discontinue this medication. The medication in question is a non-essential medical, often used temporarily and can be transition to other forms of therapy that would be of lesser occupation hazards. She agreed on April 20, 2017 to discontinue the medication with close follow - up for care.  If there are any questions or concerns, please contact me…"

23.     In late April 2017, Ms. Irving notified Tiffany Harring at Nevex Global of Dr. Sims' letter.  Harring told Ms. Irving that she would note the existence of his letter and would reach out to Ms. Irving for the letter in the near future as part of their investigation.  Defendant failed to ask Ms. Irving for the letter.

24.     Thereafter, on April 24, 2017, Defendant terminated Ms. Irving's employment.

## IV.
## CAUSES OF ACTION

### Disability Discrimination

25.     Plaintiff incorporates herein paragraphs 1-24, *supra*, as if repeated *verbatim*.

26.     The ADA and the TCHRA prohibit discrimination against an employee on the basis of their disability.

27.     Defendant is an employer within the meaning of the ADA and the TCHRA.

28.     Plaintiff was a qualified individual within the meaning of the ADA and the TCHRA at all times relevant to this Complaint.

29.     Plaintiff belongs to a class protected under the ADA and the TCHRA.

30.     By failing to accommodate Plaintiff and terminating Plaintiff, based on her actual or perceived disability, Defendant discriminated against Plaintiff in violation of the ADA and the TCHRA.

31.     At all times material hereto, Plaintiff was qualified for her employment as a Safety Permit to Work Coordinator.

32.     Defendant discriminated against Plaintiff based on her disability intentionally and with reckless disregard to Plaintiff's rights under the ADA and the TCHRA.

33.     The unlawful practices committed by Defendant directly caused Plaintiff's damages, as set forth below.

## V.
## DAMAGES

34.     As a result of Defendant's unlawful conduct, Plaintiff has suffered economic damages, including past and future lost income, lost benefits, interest on back and front pay, job

search expenses and injury to credit, and other consequential and incidental financial damages. Plaintiff has also suffered non-economic damages, such as emotional distress and mental anguish.

35.     Defendant acted in reckless disregard to Plaintiff's right to be free from disability discrimination and intentionally engaged in an unlawful employment practice by discriminating against Plaintiff.

36.     Defendant's oppressive and/or malicious conduct calls for the imposition of damages in an amount sufficient to deter Defendant from engaging in such acts of discrimination in the future.

37.     Plaintiff is also entitled to her attorneys' fees and costs incurred in this matter.

## VI.
## ATTORNEYS' FEES

38.     A prevailing party may recover reasonable attorneys' and experts' fees under the ADA and TCHRA.

39.     Plaintiff seeks all reasonable and necessary attorneys' fees and expert witness fees in this case from Defendant.

40.     Plaintiff additionally seeks recovery of all costs associated with the prosecution of this action.

## VII.
## JURY DEMAND

41.     Plaintiff demands a trial by jury of all the issues and facts in this case.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1.     The Court assume jurisdiction of this cause and that Defendant be cited to appear;

2.  The Court award Plaintiff economic and/or non-economic damages, as specified above;

3.  The Court award Plaintiff punitive damages, as specified above;

4.  The Court award Plaintiff the equitable remedy of reinstatement or, in the alternative, front pay;

5.  The Court award Plaintiff her reasonable attorneys' and expert fees and costs;

6.  The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed; and

7.  The Court award Plaintiff any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

ROSS-SCALISE LAW GROUP
1104 San Antonio Street
Austin, Texas 78701
T: (512) 474-7677
F: (512) 474-5306

*/s/ Brett C. Beeler*
**Daniel B. Ross**
State Bar No. 00789810
Dan@rosslawgroup.com
**Brett C. Beeler**
State Bar No. 24097357
Brett@rosslawgroup.com
**ATTORNEYS FOR PLAINTIFF**